**SO ORDERED.**

**SIGNED this 26 day of May, 2010.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

| | |
|---|---|
| **IN RE:** | |
| **D&B SWINE FARMS, INC.,** | **CASE NO. 09-02813-5-JRL** |
| DEBTOR. | Chapter 12 |
| | |
| **D&B SWINE FARMS, INC.,** | |
| PLAINTIFF | **ADVERSARY PROCEEDING** |
| | **NO.:  09-00160-8-JRL** |
| v. | |
| **MURPHY-BROWN, L.L.C., and SMITHFIELD FOODS, INC.,** | |
| DEFENDANTS. | |

_____

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

This case is before the court on Smithfield Food, Inc.'s ("Smithfield") motion for summary judgment.  On May 6, 2010, the court conducted a hearing on this matter in Raleigh, North Carolina.

**JURISDICTION AND PROCEDURE**

This court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), which this court may hear and determine.

**UNDISPUTED FACTS**

1. On June 14, 1999, D&B Swine Farms, Inc. ("D&B") entered into a Swine Production Agreement with Dogwood Farms II, LLC ("Dogwood Farms"), whereby the parties agreed that D&B would breed, grow and care for a group of breeding swine and their offspring for compensation determined according to a payment schedule.

2. The assets of Dogwood Farms were acquired by Premium Standard Farms of North Carolina, Inc. ("PSF NC"). That acquisition began a series of corporate mergers and property transfers relevant to Smithfield's motion for summary judgment.

3. On September 4, 2001, D&B entered an agreement with PSF NC for nursery services ("the Nursery Agreement"). On July 25, 2002, PSF NC and D&B entered into an Amended and Restated Sow Contract Grower Agreement (the "Sow Agreement"). A third agreement between D&B and PSF NC, which the parties refer to as the "Finishing Agreement," was not written. Pursuant to the Finishing Agreement and beginning in or around late 2001 or early 2002, D&B was to wean pigs to a weight acceptable for market sale. The aforementioned contracts collectively are known as the "Swine Production Contracts."

4. PSF NC was a subsidiary of Premium Standard Farms, Inc. ("PSF, Inc."), which owned all the outstanding shares of stock of PSF NC. On May 9, 2005, PSF NC merged with and into PSF, Inc. PSF, Inc. was the surviving entity of the merger.

5. On August 2, 2007, PSF, Inc. was merged into New PSF, LLC. The certificate of merger designates New PSF, LLC as the surviving entity and states its new name as Premium Standard Farms, LLC ("PSF, LLC"). Paragraph 6 of the certificate provides that "[t]he Agreement and Plan of Merger is on file at 200 Commerce Street, Smithfield, Virginia 23431, the place of business of the surviving limited liability company." That address also appears on Smithfield's letterhead.

6. The certificate of merger between PSF, Inc. and New PSF, LLC was signed by Craig A.A. Dixon as Assistant Secretary of New PSF, LLC. Dixon is also an employee of Smithfield in various capacities.

7. On July 20, 2007, M-B Farms Sub, LLC ("M-B Farms") was formed. PSF, LLC transferred its rights under the Swine Production Contracts and other varied contracts to M-B Farms on August 17, 2007. This agreement was executed by Dixon as Assistant Secretary to both M-B Farms and PSF, LLC.

8. On January 2, 2008, M-B Farms merged with Murphy-Brown, LLC ("Murphy-Brown"). Murphy-Brown was the surviving entity. The certificate of merger indicates it is on file at Murphy-Brown's place of business, which is also the address of Smithfield.

9. On February 12, 2009, D&B received a notice from Murphy-Brown that it was terminating the Sow Agreement.

3

## PROCEDURAL HISTORY

D&B filed a complaint against Murphy-Brown and Smithfield (collectively "Defendants") alleging: (1) wrongful termination of the Amended and Restated Sow Contract Grower Agreement dated July 25, 2002; and (2) breach and anticipatory repudiation of the Amended and Restated Nursery Contract Grower Agreements dated September 4, 2001 and the Finishing Agreement, which was an oral contract. On September 30, 2009, Defendants filed a Motion to: i) dismiss Smithfield Foods, Inc. from complaint and ii) compel arbitration and dismiss, or alternatively stay, adversary proceeding during such arbitration. Simultaneously, Defendants also filed a memorandum in support thereof. A hearing was held in this court on December 3, 2009 and an order entered on January 22, 2010 converting defendants' motion to dismiss to a motion for summary judgment and denying defendant's motion to compel arbitration and dismiss or stay adversary proceeding.

## STANDARD OF REVIEW

Bankruptcy Rule 7056 adopts Rule 56 of the Federal Rules of Civil Procedure. Under Rule 56, "[summary] judgment is proper if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). In making the determination, conflicts are resolved by viewing all facts and inferences to be drawn from the facts in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993 (1962). "When a motion for summary judgment is made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set forth specific facts showing that there is a genuine issue for trial." Fed. R.

Civ. P. 56(e)(2). "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## ANALYSIS

D&B asserts that Smithfield assumed the rights and responsibilities under the Swine Production Contracts from PSF, Inc. in or around May 2007. D&B further asserts that Smithfield assigned the Swine Production Contracts to Murphy-Brown, but at some point after that assignment Smithfield reassumed the rights and responsibilities in addition to Murphy-Brown's assignment of those same rights. D&B's argument to include Smithfield as a party rests on their belief that Murphy-Brown is a wholly-owned subsidiary of Smithfield and Murphy-Brown is generally responsible for Smithfield's production of market hogs, primarily through contract growers like D&B.

Smithfield moves for summary judgment on all D&B's claims and in support of that motion asserts that it was never a party to any of the Swine Production Contracts and never assumed the rights and responsibilities of those contracts. It is undisputed that Murphy-Brown, through its predecessors, is a party to the Swine Production Contracts. Smithfield admits it is the parent company of Murphy-Brown. However, Smithfield maintains no evidence has been introduced to support D&B's claim that through the various mergers of corporate entities and conveyances between those entities that Smithfield ever acquired the rights and responsibilities of the Swine Production Contracts.

5

To withstand summary judgment, D&B has the burden of showing there is a genuine issue for trial and they have not done that with regard to Smithfield.  The only indication that Smithfield was ever a party to the contracts is made by D&B in its complaint and seems uncorroborated by the evidence.  When moving for relief, the plaintiff is obligated to provide grounds supporting why they are entitled to the relief sought, which "requires more than labels, conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986).  However, D&B puts forth no evidence to support the contention that Smithfield is a party and acknowledges in open court that it is not entirely sure what the relationship between Murphy-Brown and Smithfield is.  When a motion for summary judgment is brought the moving party cannot rest on the allegations of its pleading to met their burden. In this instance, D&B has rested on the conclusions drawn in its pleadings and failed to demonstrate any issue for trial. This court finds that Smithfield is not a party to the Swine Production Contracts.

D&B also argues that Smithfield is liable for the rights and obligations under the Swine Production Contracts as the parent company of Murphy-Brown.  It is well settled in North Carolina law that:

> [T]he facts that corporations have common officers, occupy common offices, and to a certain extent transact business for each other do not make the one corporation liable for the action of the other, except upon established legal principles.  However, a corporation which exercises actual control over another … is liable for the torts of the corporation thus controlled.  In such instances, the separate identities of parent and subsidiary or affiliated corporations may be disregarded.

B-W Acceptance Corp. v. Spencer, 149 S.E.2d 570, 575 (N.C. 1966) (citing 19 Am.Jur.2d, Corporations, s 717);  Whitehurst v. FCX Fruit and Vegetable Service, 32 S.E.2d 34, 40 (N.C.

1944)[1]; see Foley v. L&L Intern., Inc., 364 S.E.2d 733 (N.C. App. 1988) (evidence that president and his family held majority of corporate stock was insufficient to support claim that corporation was sham and mere instrumentality of president); see Kight v. Harris, 234 S.E.2d 637 (N.C. App. 1977) (president and sole owner of corporation was not liable for goods sold and delivered to corporation absent evidence showing that president and sole owner treated corporation as a mere alter ego). There are few instances when a parent company will be held liable for the acts of its subsidiary. Liability of a parent company hinges on the parent's actual control. Actual control by a parent company manifests as a domination and control that leaves the subsidiary with "no will mind or existence" of its own. Lowendahl v. Baltimore & O.R. Co., 247 A.D. 144, 154 (N.Y.A.D 1936) (citing Berkley v. Third Avenue R. Co., 244 N.Y. 84 [1926].

Based on the record, the court finds Murphy-Brown is not operated as a department of Smithfield. Alternatively, Murphy-Brown and Smithfield are separate and distinct companies that have a business relationship and Murphy-Brown legitimately considers the needs of Smithfield when implementing its grower contracts. Murphy-Brown alone has acquired the contract rights and responsibilities of PSF, Inc. as evidenced by the "Bill of Sale & Assignment Agreement ("Bill of Sale")."[2] The Bill of Sale evidences Murphy-Brown as a party because there is a clear line of

---

[1] [T]he mere fact that one corporation owns all capital stock of another corporation and that members of board of directors of both corporations are the same, nothing else appearing, is not sufficient to render parent corporation liable for contracts of its subsidiary and, in order to establish liability on part of parent on such contracts, there must be additional circumstances showing fraud, actual or constructive, or agency.

[2] The Bill of Sale states, "Assignor hereby assigns, conveys, transfers and delivers to Assignee all rights, title and interests of Assignor in and to all assets, properties, and rights owned, used or useable …" Paragraph 1. Assignor is identified in the Bill of Sale as PSF, LLC and assignee is identified as M-B Farms. Defense Exhibit 4. A certificate of merger between M-B Farms and Murphy-Brown serves as Defense Exhbit 5. The certificate of merger was filed with the Delaware Secretary of State and provides the name of the surviving entity is Murphy-Brown.

transfers between the original contracting party, PSF NC, and Murphy-Brown. The transfers and acquisitions end with M-B Farms merging into Murphy-Brown in 2008. In contrast, there are no mergers or acquisitions between PSF NC or its successors in interest and Smithfield.

D&B has also alleged a claim for unfair and deceptive trade practices under Chapter 75 of the North Carolina General Statutes. To establish a claim for unfair or deceptive trade practices, a plaintiff must show: "(1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately cause injury to the plaintiff." Dalton v. Campt, 353 N.C.647, 656 (2001). "A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." Id. The record does not support a finding of unfair and deceptive trade practices by Smithfield.

## CONCLUSION

Due to the D&B's inability to present more than speculative factual allegations, this court **GRANTS** Smithfield's motion for summary judgment.

**END OF DOCUMENT**

---

The original certificate of merger was filed January 2, 2008.