**SO ORDERED.**

**SIGNED this 02 day of December, 2011.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WILSON DIVISION

| | |
|---|---|
| IN RE: | |
| D&B SWINE FARMS, INC., | CASE NO. 09-02813-8-JRL |
| Debtor. | CHAPTER 7 |
| | |
| D&B SWINE FARMS, INC., | |
| Plaintiff | |
| | ADVERSARY PROCEEDING |
| v. | CASE NO. 09-00160-8-JRL |
| MURPHY-BROWN, L.L.C., and SMITHFIELD FOODS, INC., | |
| Defendants. | |

### ORDER

This matter came before the court on defendant Murphy-Brown, L.L.C.'s motion for partial summary judgment. A hearing was held in Raleigh, North Carolina on September 7, 2011. At the hearing, the parties raised the issue of the impact of the Supreme Court's recent decision in Stern v. Marshall, 564 U.S. ___, 131 S.Ct. 2594 (2011), on the present adversary proceeding. On September 8, 2011, the court entered an order staying the litigation in this case to allow the parties to brief the issue. Those briefs were filed on October 7, 2011.

## BACKGROUND

On April 6, 2009, D&B Swine Farms Inc. ("D&B"), the plaintiff in this adversary proceeding, filed for protection under chapter 12 of the Bankruptcy Code.  Subsequently, the case was converted to chapter 11, and finally, on May 11, 2011, the case was converted to chapter 7.  D&B began the present adversary proceeding by filing a complaint against Murphy-Brown, L.L.C. ("Murphy-Brown") and Smithfield Foods, Inc.("Smithfield") on July 30, 2009.[1]

D&B alleges several claims against Murphy-Brown and Smithfield: claim one asserts a wrongful termination of a Sow Contract Grower Agreement dated July 25, 2002 ("Sow Agreement"); claim two asserts a breach and anticipatory repudiation of a Nursery Contract Grower Agreement dated September 4, 2001 ("Nursery Agreement");[2] and claim three asserts a breach and anticipatory repudiation of an unwritten lease of the pig finishing floor space at D&B's farming operations ("Finishing Agreement").[3]

On September 30, 2009, Murphy-Brown and Smithfield moved the court (1) to dismiss Smithfield from the complaint and (2) to compel arbitration and dismiss or stay the adversary proceeding.  The court entered an order on January 22, 2010, finding that the dismissal of

---

[1] The factual background underlying this action was set forth in previous orders and does not need to be restated here.

[2] Both the Nursery Agreement and the Sow Agreement contained written arbitration clauses.  The Finishing Agreement was unwritten; therefore, there is no argument that it is subject to arbitration.

[3] Originally, D&B asserted a fourth claim that the wrongful termination of the above-stated agreements constitutes unfair and deceptive trade practices under North Carolina law.  However, D&B conceded this claim in its response to Murphy-Brown's motion for summary judgment.

2

Smithfield should be decided as a matter of summary judgment[4] and denying the motion to compel arbitration. In denying the motion to compel arbitration, the court found that D&B's claims for post-petition breach of the Nursery Agreement and the Finishing Agreement were "core proceedings," pursuant to 28 U.S.C. § 157(b)(2), and therefore, the arbitration clause in the Nursery agreement was unenforceable. See Philips v. Congelton, L.L.C. (In re White Mountain Mining Co.), 403 F.3d 164, 169 (4th Cir. 2005) (explaining that "[a]rbitration is inconsistent with centralized decision-making because permitting an arbitrator to decide a core issue would make debtor-creditor rights 'contingent upon an arbitrator's ruling' rather than the ruling of the bankruptcy judge assigned to hear the debtor's case") (internal citation omitted). Furthermore, the court found that the Sow Agreement claim was not "core," but instead was "related to" the pending bankruptcy case, as defined by 28 U.S.C. § 157(c)(1).[5] However, the court determined that enforcing the arbitration provision in the Sow Agreement was inappropriate in this case "because it would run exactly counter to the primary goal of a chapter 11 proceeding, which is to efficiently rehabilitate the debtor."

On February 8, 2010, Murphy-Brown filed its answer to D&B's complaint. Murphy-Brown denied that the proceeding was core and stated that it did not consent to the entry of final orders by the Bankruptcy Court. On July 1, 2011 Murphy Brown filed a motion for partial

---

[4] On May 26, 2010, the court entered an order dismissing Smithfield Foods, Inc. from the adversary proceeding.

[5] 28 U.S.C. § 157(c)(1) states that "[a] bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11." However, rather than entering a final judgment in such a proceeding, "the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge . . . ."

3

summary judgment. At the hearing on that motion, the parties raised the issue of the impact of the Supreme Court's recent decision in Stern on the present adversary proceeding.

**DISCUSSION**

As stated above, the court's previous order found that the claims for post-petition breach of the Nursery Agreement and the Finishing Agreement were core claims. D&B argues that the "narrow" holding of Stern does not impact the court's capacity to hear and issue final judgment on its claims against Murphy-Brown, and therefore, there is no reason to deviate from the court's conclusion set forth in the January 22, 2010 order. Murphy-Brown contends that after Stern, the court no longer has the authority to enter final judgment with respect to any claims in this action, including the claims that the court previously found to be core, but instead, the court will be required to submit proposed findings of fact and conclusions of law to the district court for consideration.

In the January 22, 2010 order, the court acknowledged that it was an unsettled question whether a post-petition breach of a pre-petition contract was a core claim. However, it is clear that Stern now drives the analysis as to the classification of such claims. In light of the ruling in Stern, a state common law action against a defendant who filed no claim for breach of contract to augment the estate—whether the breach occurred pre- or post-petition—must be classified as a non-core proceeding. In this case, therefore, this court does not have authority to enter final judgment with respect to any of the claims asserted by D&B in this action.

However, because the court finds that D&B's claims must be considered non-core post-Stern but are "related to" the underlying bankruptcy case, the court retains the authority to hear the claims and "submit proposed findings of fact and conclusions of law to the district court,"

pursuant to 28 U.S.C. § 157 (c)(1). On this issue, the court rejects the approach taken by the Bankruptcy Court for the District of Montana in Samson v. Blixseth (In re Blixseth), 2011 Bankr. LEXIS 2953 (Bankr. D. Mont. Aug. 1, 2011). In Blixseth, the court found that it did not have constitutional authority over statutorily "core" fraudulent conveyance claims, consistent with the decision in Stern. Id. at *34. However, the Montana Bankruptcy Court continued to find that it also had no statutory authority to render proposed findings of fact and conclusions of law for these "core" fraudulent conveyance claims. Id. at *34–35. Specifically, the court stated:

> Unlike in non-core proceedings, a bankruptcy court has no statutory authority to render findings of fact and conclusions of law for core proceedings that it may not constitutionally hear. While 28 U.S.C. § 157(c)(1) allows a bankruptcy judge to render findings and conclusions in "a proceeding that is not a core proceeding but that is otherwise related to a case under title 11," no other code provision allows bankruptcy judges to do the same in core proceedings.

Id. Based on this premise, the court found that it had no authority to hear the fraudulent conveyance claim and that it must be heard by the district court in the first instance. Id. at *35. Several other courts have taken similar approaches. See, e.g., Sitka Enterprises, Inc. v. Wilfredo Segarra-Miranda, 2011 U.S. Dist. LEXIS 90243, at *7–8 (D. P.R. Aug. 10, 2011) ("[T]he resolution of the fraudulent conveyance action brought by the trustee in this case cannot be adjudicated by the Bankruptcy Court since it lacks constitutional authority to do so under the restrictions placed by Article III."); Meyers v. Textron Financial Corp. (In re AIH Acquisitions, LLC), 2011 U.S. Dist. LEXIS 101190 (N.D. Tex. Sept. 7, 2011) (vacating orders of the bankruptcy court based on lack of constitutional authority). Other courts have found that the decision in Stern had the effect of removing "certain claims from core bankruptcy jurisdiction, and relegat[ing] them to the category of claims that are merely related to bankruptcy proceedings and thus subject to being heard, but not finally decided by bankruptcy court." Paloian v. Am.

5

Express Co. (In re Canopy Financial, Inc.), 2011 U.S. Dist. LEXIS 99804, at *10 (N.D. Ill. Sept. 1, 2011) (internal quotations omitted); see also Gecker v. Flynn (In re Emerald Casino, Inc., 2011 Bankr. LEXIS 3324 (Bankr. N.D. Ill. Aug. 26, 2011). This court finds the latter approach congruent with the Supreme Court's intention in Stern.

Therefore, the court would normally hear all of D&B's claims and "submit proposed findings of fact and conclusions of law to the district court," pursuant to 28 U.S.C. §157(c)(1), and that is, in fact, how the court will proceed in regard to the minor claim for breach of the unwritten Finishing Agreement. However, as discussed above, the Nursery Agreement and Sow Agreement contain arbitration provisions. It is well-accepted that arbitrations provisions are generally favored in federal courts. In bankruptcy proceedings, however, whether a proceeding is a "core proceeding" generally determines whether an arbitration clause can be enforced. See White Mountain Mining Co., 403 F.3d at 168–70. Accordingly, the court previously denied Murphy-Brown's motion to compel arbitration because it found that D&B's claim for breach of the Nursery Agreement was a core claim and that it would be untenable to arbitrate the claim for breach of the Sow Agreement while resolving the related core claims (i.e., the claims for breach of the Nursery Agreement and Finishing Agreement).[6] Now, however, because Stern mandates essentially that the claims that this court previously classified as core be classified as non-core, the primary basis for the court's previous denial of the motion to compel arbitration is no longer

---

[6] In regard to the arbitration of the Sow Agreement, the court was also concerned with defeating the objective of "centrality" in the context of a chapter 11 case. However, the court stated that "[i]f the other claims were not properly before this court, and if the conflicts just outlined could be avoided, then the court would enforce the arbitration clause notwithstanding this court's usual misgivings about the use of arbitration in chapter 11 bankruptcy cases."

After Stern, the other claims in the case are no longer "core proceedings" and the bankruptcy case has been converted to chapter 7. Therefore, the concerns present at the time of the January 22, 2010 order no longer exist.

applicable.

## **CONCLUSION**

Based on the foregoing, the court finds that it has the authority to hear all of D&B's claims in this case, but only to enter proposed findings of fact and conclusions of law. However, this conclusion compels a ruling that the claims for breach of the Nursery Agreement and Sow Agreement be submitted to arbitration in accordance with the provisions contained therein. All further proceedings in this case are stayed pending the conclusion of arbitration.

**END OF DOCUMENT**